UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

               Plaintiff,

    v.

SELIM ZHERKA
  a/k/a "Sam Zherka,"
  a/k/a "Sammy Zherka,"

               Defendant.

S2 14 Cr. 545 (CS)

## **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISQUALIFY PROSECUTORS**

Frederick P. Hafetz
fhafetz@hafetznecheles.com
Brian L. Doppelt
bdoppelt@hafetznecheles.com
One Grand Central Place
60 East 42nd St., 36th Floor
New York, New York 10165
Tel.: (212) 997-7400
Fax: (212) 997-7646
*Attorneys for Defendant*

Dated: New York, New York
January 5, 2015

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................................... i

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ...................................................................................................................... 3

ARGUMENT ............................................................................................................................ 5

    1.       Absence-of-a-disinterested prosecutor claim is established when a prosecutor has an "an axe to grind against the defendant." ................................... 5

    2.       The facts prove that Prosecutors Jacobson and Carbone had an axe to grind against the defendant—namely, their personal animus based on Mr. Zherka's proper exercise of free speech and their potential political motivation for conducting a grand jury investigation............................................ 7

CONCLUSION......................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

C<span>ASES</span>

Brayshaw v. City of Tallahassee, Fla.,
709 F. Supp. 2d 1244 (N.D. Fl. 2010) ...................................................................... 9

Hempstead Video, Inc. v. Inc. Village of Valley Stream,
409 F.3d 127 (2d Cir. 2005) ...................................................................................... 5

In re Taylor,
73 A.3d 95, 101 (D.C. 2013) .................................................................................... 14

Kindred v. State,
521 N.E.2d 320 (Ind. Sup. Ct. 1988) ...................................................................... 15

People v. Zimmer,
51 N.Y.2d 390 (1980) .............................................................................................. 13

Rankin v. McPherson,
483 U.S. 378 (1987) .................................................................................................. 9

Sheehan v. Gregoire,
272 F. Supp. 2d 1135 (W.D. Wash. 2003) ............................................................... 9

Solow v. Conseco, Inc.,
06-CV-5988 (BSJ) (TUK), 2007 WL 1599151 (S.D.N.Y. June 4, 2007) ................. 5

United States v. Basciano,
Nos. 03-CR-929 (NGG), 05-CR-060 (NGG), 2006 WL 3486774 (E.D.N.Y.
Dec. 1, 2006) ........................................................................................................... 15

United States v. Goodwin,
457 U.S. 368 (1982) ............................................................................................. 10-11

United States v. R. Enterprises, Inc.,
498 U.S. 292 (1991) ................................................................................................ 11

United States v. Terry,
806 F. Supp. 490 (S.D.N.Y. 1992) ........................................................................... 6

United States v. Whittaker,
268 F.3d 185 (3d Cir. 2001) ...................................................................................... 5

Wright v. United States,
732 F.2d 1048 (2d Cir. 1984) ............................................................................passim

<u>Young v. United States ex rel. Vuitton Et Fils S.A.,</u>
    481 U.S. 787 (1987) ................................................................................. 5

**OTHER AUTHORITIES**

28 C.F.R. § 50.10(a)(3) ................................................................................. 12

## PRELIMINARY STATEMENT

This Court should disqualify prosecutors when the facts prove that they have an axe to grind against the defendant, as distinguished from a proper interest in investigating and prosecuting a defendant with respect to the crimes charged in the indictment. The prosecutors in this case have demonstrated an axe to grind against the defendant, Selim Zherka, that is wholly independent of the crimes charged in the indictment. Accordingly, this Court must disqualify the prosecutors.

The indictment charged Mr. Zherka with false statements to banks, wire fraud, preparing false tax returns, impeding the IRS, and witness tampering. But these prosecutors allowed their emotional reaction to an article published in Mr. Zherka's newspaper more than five months before the indictment's return to overtake their years of experience in objectively applying the law to the facts. Mr. Zherka's newspaper identified the towns in which the prosecutors lived. The First Amendment permits the publication of the actual home addresses of law enforcement officers. Notwithstanding the prevailing First Amendment case law, the prosecutors viewed this article as threat. Even worse, this very same U.S. Attorney's Office approved the issuance of a grand jury subpoena to the newspaper's direct mail distributor, ostensibly to identify the newspaper's readership. The only reasonable inference to draw from this use of the grand jury is that the U.S. Attorney's Office was impermissibly investigating Mr. Zherka and his newspaper for constitutionally protected speech.

If that were not enough, it also appears that the prosecutors' pursuit of Mr. Zherka may well have been politically motivated. The article to which the prosecutors reacted so strongly alleged that Janet DiFiore, the Westchester County District Attorney, had asked the prosecutors to investigate Mr. Zherka as a favor to her and her husband, both of whom had been previous targets of the newspaper. Once again, although the allegation regarding Ms. DiFiore is completely unrelated to the indictment's substance, and is constitutionally protected speech, the prosecutors selected "DiFiore" as a search term when filtering documents found on Mr. Zherka's alleged coconspirator's computer. In light of the absence of any connection between Ms. DiFiore and the indictment's subject matter, a fair—and perhaps the only—inference to draw is that the prosecutors' investigation impermissibly included the political connection alleged in the article.

Because the facts establish that the prosecutors had impermissible reasons in forwarding this prosecution—namely, their personal animus based on Mr. Zherka's proper exercise of free speech and their potential political motivation for conducting a grand jury investigation—this Court must disqualify them.

# BACKGROUND

The defendant, Selim "Sam" Zherka is a Tea Party organizer[1] and the publisher of *The Westchester Guardian*, a local weekly newspaper that frequently challenges government taxation, spending, and corruption.[2]  On March 27, 2014, *The Westchester Guardian* published a front-page article (the "March 27, 2014 Article") that disparaged two federal prosecutors, Messrs. Elliot Jacobson and Perry Carbone, who were conducting a grand jury investigation into Mr. Zherka.  Ex. B. (March 27, 2014 Article).  The March 27, 2014 Article was entitled "Prosecutors Elliot Jacobson and Perry Carbone—Unethical And Corrupt HYPOCRITES!!!!!!" The article opened with the federal government's targeting of individuals associated with the Tea Party, highlighted Mr. Zherka's role as a Tea Party organizer, and launched an attack against Prosecutors Jacobson and Carbone for a politically motivated investigation.  Id.

On May 6, 2014, a federal grand jury sitting in White Plains, New York issued a grand jury subpoena to *The Westchester Guardian's* direct mail distributor, Promail USA.  Ex. C (May 6, 2014 Grand Jury Subpoena to Promail USA).  As a

---

[1] See Ex. A (Flyer for Westchester Tea Party rally, which was paid for by "Sam Zherka, Westchester Ind. Party, and Westchester Guardian"); Sam Abady and Eric Silberberg, "The Nation's First Statewide Tea Party is Born in New York," The Westchester Guardian, Aug. 16, 2010, at 3-4, 9, available at http://www.westchesterguardian.com/8_26_10/8_26%20Abady.Silberberg%20Tea%20party.html; Celeste Katz, "The Daily Politics:  Tea Party Activists Pulling Together For New York – And Then National – Ballot Line Push," The New York Daily News, August 18, 2010, available at http://www.nydailynews.com/blogs/dailypolitics/tea-party-activists-pulling-new-york-national-ballot-line-push-blog-entry-1.1680246.]

[2] See, e.g., Hezi Aris, "Yonkers Industrial Development Agency Robs Westchester County to Pay . . . Do the Math!" The Westchester Guardian, October 3, 2013, at 4, available at http://www.westchesterguardian.com/10_3_13/wg_10_3_fin.pdf; Stephen Mayo, "The Echo Bay 'Deal,' Given a Virtual 'Pass,'" The Westchester Guardian, June 13, 2013, at 6-7, available at http://www.westchesterguardian.com/6_13_13/wg_6_13_fin.pdf.

relatively small newspaper, *The Westchester Guardian* regularly outsources part of its distribution to Promail. The grand jury subpoena sought all documents related to *The Westchester Guardian* and to mailings under specified U.S. Postal Service permit numbers from March 15, 2014 to April 15, 2004—the time period during the March 27, 2014 Article was published and distributed.

On September 16, 2014, a federal grand jury sitting in White Plains returned a 35-count indictment against Mr. Zherka, charging him with false statements to banks, wire fraud, preparing false tax returns, impeding the IRS, and witness tampering. Dkt. 13. Based on the face of the indictment, none of the 35 counts was related to the March 27, 2014 Article.

On September 19, 2014, this Court held a detention hearing. The prosecution team argued that Mr. Zherka should be detained because, among other things, the March 27, 2014 Article constituted a threat against them, as opposed to constitutionally protected speech. Indeed, Prosecutor Jacobson asserted that the threats in the article were reason alone to the detain Mr. Zherka. Ex. D. (September 19, 2014 Hearing Transcript) at 21. This Court agreed with the prosecutor's view of the article in the first instance (id. at 78), but subsequently reconsidered and reversed its initial position on October 23, 2014 (Ex. E. (October 23, 2014 Hearing Transcript) at 67). Specifically, this Court found that the March 27, 2014 Article did not constitute a true threat under First Amendment prevailing case law. Id.

<u>**ARGUMENT**</u>

**Because the facts establish that Prosecutors Jacobson and Carbone were not disinterested in forwarding the prosecution against Mr. Zherka, this Court must disqualify them.**

1. **Absence-of-a-disinterested prosecutor claim is established when a prosecutor has an "an axe to grind against the defendant."**

Federal courts have the inherent authority to disqualify attorneys in pending litigation to "preserve the integrity of the adversary process." <u>Hempstead Video, Inc. v. Inc. Village of Valley Stream</u>, 409 F.3d 127, 132 (2d Cir. 2005); <u>Solow v. Conseco, Inc.</u>, 06-CV-5988 (BSJ) (TUK), 2007 WL 1599151, at *3 (S.D.N.Y. June 4, 2007); <u>see</u> <u>also</u> <u>United States v. Whittaker</u>, 268 F.3d 185, 193-94 (3d Cir. 2001) (reviewing district court's disqualification of U.S. Attorney's Office to determine whether court "appropriately balance[d] proper considerations of judicial administration against the United States' right to prosecute the matter through counsel of its choice").

"It is a fundamental premise of our society that the state wield its formidable criminal enforcement powers in a rigorously disinterested fashion, for liberty itself may be at stake in such matters." <u>Young v. United States ex rel. Vuitton Et Fils S.A.</u>, 481 U.S. 787, 810 (1987). The Second Circuit has long recognized the importance of disinterested prosecutors and the concomitant right to disqualify prosecutors who are not disinterested. <u>Wright v. United States</u>, 732 F.2d 1048, 1056 & nn.7-8 (2d Cir. 1984) (Friendly, J.). The absence-of-a-disinterested-prosecutor claim arises when the prosecutor "has, or is under the influence of others who have, an axe to grind against the defendant, as distinguished from the

appropriate interest that members of society have in bringing a defendant to justice with respect to the crime with which he is charged." Wright, 732 F.2d at 1056; see also United States v. Terry, 806 F. Supp. 490, 497 (S.D.N.Y. 1992) (noting that "a prosecutor must harbor no *personal* animosity") (emphasis in original).

The Wright Court was clear in distinguishing this type of claim from one based on prosecutorial conflict of interest. "In cases like this," the Court explained, "where there is no basis for a claim that the prosecutor did not believe the defendant to be guilty, the claim is not that the prosecutor had an interest in opposition to his proper one in securing an indictment and a conviction; it is rather that *he had an additional and impermissible reason in forwarding the prosecution*." Wright, 732 F.2d at 1056 n.7 (emphasis added). The Court also distinguished this claim from one for selective or discriminatory prosecution (which the defendant in Wright clearly would have failed to meet). 732 F.2d at 1055-56.

Turning to the burden of proof, the Court explained that "the degree of prosecutorial misconduct of the sort here in question and the degree of prejudice to the defendant necessary to justify action by a reviewing court steadily increase as the case goes forward, with *the least* being required on a motion to disqualify, somewhat more on a pretrial motion to dismiss an indictment, still more on a motion in the district court after conviction but before appeal, somewhat more on direct appeal, and . . . a good deal more on collateral attack." Wright, 732 F.2d at 1056 n.8. (emphasis added).

**2. The facts prove that Prosecutors Jacobson and Carbone had an axe to grind against the defendant—namely, their personal animus based on Mr. Zherka's proper exercise of free speech and their potential political motivation for conducting a grand jury investigation.**

The objective facts here plainly establish that the prosecutors—Messrs. Jacobson and Carbone—had "an axe to grind against the defendant, as distinguished from the appropriate interest that members of society have in bringing a defendant to justice with respect to the crime with which he is charged." Wright, 732 F.2d at 1056. A disqualification of the prosecutors is therefore warranted. To start, the prosecutors have long maintained that the March 27, 2014 Article constituted a threat against them. As this Court found, however, the March 27, 2014 Article did not constitute a threat, but was constitutionally protected speech. Ex. E. (October 23, 2014 Hearing Transcript) at 67. This Court's ruling notwithstanding, the prosecution team continues to assert its legally mistaken belief that the article constitutes a threat. Ex. F (October 31, 2014 Carbone Declaration) at ¶ 7. Even worse, on October 31, 2014, one of the prosecutors submitted a declaration in a civil action before Judge Thomas Griesa in the Southern District of New York that improperly relied on this Court's rejected finding that the March 27, 2014 Article was a threat. Id. at ¶¶8, 16. The prosecutor did not inform Judge Griesa about this Court's reversal. Id. Indeed, another Assistant U.S. Attorney failed to correct this error in a December 22, 2014 filing before Judge Griesa, creating the misimpression that this Court still found that Mr. Zherka "attempted to intimidate . . . prosecutors in the course of the investigation that is the subject of this case." Ex. G (December 22, 2014

Government Reply Memorandum of Law in Support of Defendants Ryan and Ashcroft's Motion for Reconsideration) at 8 n. 3.

To be sure, the March 27, 2014 Article criticizes Prosecutors Jacobson and Carbone for their prosecutorial tactics. It employs caustic and unpleasantly sharp attacks. Most upsetting to the prosecutors was the following passage:

### THE JANET DiFIORE CONNECTION

> In and around the spring of 2009, prior to the Tea Party Evolution (T.E.A.), Westchester County District Attorney Janet Difiore [*sic*] contacted federal prosecutor Perry A. Carbone, 56 (happy belated birthday), a 20-year resident of Yorktown, and asked that he and Elliot Jacobson, 60 (happy belated Birthday), a Greenburgh resident, also a federal prosecutor, to investigate Sam Zherka, as a favor to her and her husband and in retaliation for negative articles previously published about her and her husband in Publisher Sam Zherka's newspaper, *The Westchester Guardian.*

The prosecutors viewed this statement as a threat, contending that "the only conceivable reason for including that was as a message that Zherka was investigating the prosecutors and had personal information about them." Ex. H (September 18, 2014 Government Memorandum of Law in Support of Government's Motion for Pretrial Detention) at 18. At the September 19, 2014 bail hearing, Prosecutor Jacobson repeatedly referred to this passage as a "threat." Ex. D. (September 19, 2014 Hearing Transcript) at 21-23, 36, 62-63, 72. In particular, Prosecutor Jacobson stated, "I think any clear reading of that article demonstrates there's an intent to threaten and intimidate federal prosecutors," (id. at 62), arguing that this Court would have found it deserving of U.S. Marshal intervention, (id. at

23) ("I bet you'd be on the phone with the Marshals and I bet you would consider that as a threat and totally improper.")

Although it was perhaps only natural for Prosecutors Jacobson and Carbone to be annoyed, irritated, and even offended by the article's derogatory remarks, these prosecutors—who have decades of experience as Assistant U.S. Attorneys—should have known that the article was constitutionally protected speech. Under any objective analysis of prevailing federal case law, the March 27, 2014 Article does not even approximate a criminally prosecutable threat. See, e.g., Rankin v. McPherson, 483 U.S. 378, 387 (1987) (noting that First Amendment protects "vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials"); Brayshaw v. City of Tallahassee, Fla., 709 F. Supp. 2d 1244, 1250 (N.D. Fl. 2010) (holding that statute prohibiting publication of law enforcement officers' home addresses and phone numbers with the intent to intimidate did not proscribe true threats); Sheehan v. Gregoire, 272 F. Supp. 2d 1135, 1141-43, 1150 (W.D. Wash. 2003) (holding that statute prohibiting publication of personally identifiable information about law enforcement officers with the intent to harm or intimidate did not proscribe true threats).

Unfortunately, these prosecutors appear to have allowed their objective legal analysis to succumb to their personal animus against the defendant. Their legally unjustified view that the March 27, 2014 Article was a prosecutable threat extended over a period of months, during which time they had the opportunity to reconsider their position. Instead, these prosecutors compounded their legally baseless belief,

continuing to feel harmed and victimized. More than five months after the article's publication, they repeatedly characterized the newspaper article as a threat in open court, (Ex. D. (September 19, 2014 Hearing Transcript) at 21-23, 36, 62-63, 72), in briefing, (Ex. I (Memorandum of Law in Opposition to Defendant's Motion for Reconsideration of the Court's Pretrial Detention Order) at 21, 34; Ex. J (Surreply to Defendant's Motion for Reconsideration of the Court's Pretrial Detention Order) at 3), and in a declaration submitted to a court in this district (Ex. F (October 31, 2014 Carbone Declaration) at ¶ 7).

Worse yet, the U.S. Attorney's Office in White Plains used the grand jury to open an investigation into *The Westchester Guardian's* readership. Specifically, on May 6, 2014, the grand jury issued a subpoena to Promail USA, *The Westchester Guardian's* direct mail distributor, to produce all documents relating to *The Westchester Guardian* and all mailings sent under certain postal permit numbers around the time of the March 27, 2014 Article's publication. Ex. C (May 6, 2014 Grand Jury Subpoena to Promail USA). Presumably, the prosecutors' purpose in seeking this information was to identify any reader who may have acted upon the threat that the prosecutors unjustifiably perceived. It certainly bore no evident relationship to the indictment returned more than four months later.

The prosecutors' apparent use of the grand jury to investigate constitutionally protected speech further establishes that the prosecutors had "an axe to grind against the defendant." Wright, 732 F.2d at 1056; cf. United States v. Goodwin, 457 U.S. 368, 372 (1982) ("For while an individual certainly may be

penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right."). First, as already discussed, the prosecutors had no legal basis for construing *The Westchester Guardian* article as a prosecutable threat. As a result, the grand jury subpoena was invalid from its inception, because "there [was] no reasonable possibility that the category of materials the Government [sought would] produce information relevant to the general subject of the grand jury's investigation." <u>United States v. R. Enterprises, Inc.</u>, 498 U.S. 292, 301 (1991).

Second, given the maelstrom of criticism—including congressional, Department of Justice, and TIGTA investigations—that had enveloped the federal government for subjecting Tea Party organizations to selective tax enforcement,[3] the decision to employ a grand jury to identify the readership of a Tea Party publisher without a legally sound basis for criminal liability reveals, at best, personal animus, and, at worst, a politically motivated investigation. Regrettably, the latter possibility cannot be excluded. The prosecutors used the search term "DiFiore" to filter documents found on an alleged coconspirator's computer. <u>See</u> Ex. K (November 17, 2014 Ltr. to F. Hafetz from E. Jacobson & P. Carbone) at 2 n.4. Given that Ms. DiFiore's relationship with Prosecutors Jacobson and Carbone is the subject of the March 27, 2014 Article, and that Ms. DiFiore has no obvious link to the indictment's subject matter, the selection of "DiFiore" as a search term leads to

---

[3] <u>See</u> Kelly Phillips Erb, "Updated: Timeline of IRS Tax Exempt Organization Scandal," <u>Forbes</u>, May 7, 2014, available at <u>http://www.forbes.com/sites/kellyphillipserb/2014/05/07/updated-timeline-of-irs-tax-exempt-organization-scandal/</u> .

the reasonable inference that the scope of the investigation included the political views expressed in the March 27, 2014 Article. That inference is all the more reasonable in light of the defendant's reputation as a Tea Party organizer and publisher.[4]

Third, the prosecutors' personal animus is corroborated by their decision not to obtain the Attorney General's authorization to subpoena *The Westchester Guardian* for its readership rolls. The Code of Federal Regulations and the United States Attorneys' Manual require federal prosecutors to obtain the Attorney General's authorization before issuing a subpoena to a newspaper. 28 C.F.R. § 50.10(a)(3); United States Attorneys' Manual § 9-13.400. Obtaining the Attorney General's authorization would have required the prosecutors to "submit a written request summarizing the facts of the prosecution or investigation, explaining the essentiality of the information sought to the investigation or prosecution, describing attempts to obtain the voluntary cooperation of the news media through negotiation and explaining how the proposed subpoena will be fashioned as narrowly as possible to obtain the necessary information in a manner as minimally intrusive and burdensome as possible." United States Attorneys' Manual § 9-13.400. Rather than obtain the Attorney General's authorization to subpoena *The Westchester Guardian*

---

[4] See Ex. A. (Flyer for Westchester Tea Party rally, which was paid for by "Sam Zherka, Westchester Ind. Party, and Westchester Guardian"); Ex. B (March 27, 2014 Article);
Sam Abady and Eric Silberberg, "The Nation's First Statewide Tea Party is Born in New York," The Westchester Guardian, Aug. 16, 2010, at 3-4, 9, available at
http://www.westchesterguardian.com/8_26_10/8_26%20Abady.Silberberg%20Tea%20party.html;
Celeste Katz, "The Daily Politics: Tea Party Activists Pulling Together For New York – And Then National – Ballot Line Push," The New York Daily News, August 18, 2010, available at
http://www.nydailynews.com/blogs/dailypolitics/tea-party-activists-pulling-new-york-national-ballot-line-push-blog-entry-1.1680246.]

to discover its readership, which would have required "explaining the essentiality of the information sought to the investigation or prosecution" and would have laid bare the absence of a prosecutable threat, the prosecutors circumvented the mandatory process and avoided having to justify the necessity of the information sought by subpoenaing the newspaper's direct mail distributor.

*The Westchester Guardian*, as a small newspaper, regularly outsources its distribution. Here, the prosecutors were able to take advantage of the newspaper's small size by subpoenaing its outsourced direct-mail distributor. Although technically permissible, their decision to subpoena the outsourced direct mail distributor—when viewed in the context of the legally unsupportable basis of criminality, the swirling controversy regarding the federal government's treatment of Tea Party organizations, and the prosecutors' avoidance of obtaining the Attorney General's approval—reveals a callous indifference to how the defendant, as well as the public at large, would reasonably perceive their conduct as politically motivated, as opposed to disinterested. See Wright, 732 at 1055 n.6 ("[W]hat impression could the defendant have had of the fairness of a prosecution instituted by one with the personal and financial attachments of this prosecutor? Would it have been unreasonable for the defendant—or others—to doubt that the public officer, whose burden it was to screen the complaint for frivolousness and, if necessary, guide its destiny before the Grand Jury, would do so disinterestedly?") (quoting People v. Zimmer, 51 N.Y.2d 390, 395 (1980)).

Finally, Prosecutor Jacobson stated during the detention hearing that he had no personal animus. Ex. D. (September 19, 2014 Hearing Transcript) at 62-63. Yet, he repeatedly complained about the defamatory nature of the article, while conceding its irrelevance for the purpose of the bail determination. Id. at 21, 23, 63. His repeated complaints are in tension with his claimed lack of personal animus. Any such animus, of course, would be improper. The proper vehicle for addressing defamation is a lawsuit, not a criminal indictment.

Evidently, neither the results of the grand jury's criminal investigation into *The Westchester Guardian's* readership, nor the lapse of time between the March 27, 2014 Article and the September 19, 2014 detention hearing, blunted the prosecutors' "axe to grind against the defendant." The instant case is truly exceptional, as the defense obtained the critical Promail grand jury subpoena. The defense rarely has a glimpse into the prosecutors' use of grand jury subpoenas in exercising their charging discretion. See In re Taylor, 73 A.3d 95, 101 (D.C. 2013) (noting that "prosecutors' discretion with respect to charging decisions" is "a critical but largely unseen part of the criminal justice process"). To be sure, neither the defense nor the court generally has access to grand jury subpoenas used to develop the facts supporting an indictment, as this Court itself recognized during the December 16, 2014 hearing. Ex. L (December 16, 2014 Hearing Transcript) at 16; see also id. at 15 (Prosecutor Jacobson acknowledged that he had never been required to turn over grand jury subpoenas in more than 30 years of practice in state and federal courts).

And, by comparison to the Second Circuit's seminal case of <u>Wright</u>, the facts here are far more compelling. First, unlike <u>Wright</u>, where it was the prosecutor's wife who harbored a personal animus against the defendant, 732 F.2d at 1055, here it is the prosecutors themselves. Second, unlike <u>Wright</u>, where the source of the personal animus was the defendant's prior bad acts (which could have resulted in his indictment), 732 F.3d at 1055, here the source of the personal animus was Mr. Zherka's exercise of a constitutionally protected right. Third, unlike <u>Wright</u>, where the burden of proof was at its highest on collateral review, here the burden of proof is at its least. <u>Wright</u>, 732 F.2d at 1056 n.8.

Furthermore, this case stands in stark contrast to the typical motion to disqualify based on alleged personal animus that arises post-indictment. <u>See</u>, <u>e.g.</u>, <u>United States v. Basciano</u>, Nos. 03-CR-929 (NGG), 05-CR-060 (NGG), 2006 WL 3486774, at *2 (E.D.N.Y. Dec. 1, 2006); <u>Kindred v. State</u>, 521 N.E.2d 320, 327 (Ind. Sup. Ct. 1988). As the Court reasoned in <u>Basciano</u>, because "[t]he alleged threats were not made until well after [the prosecutor] presented the charges at issue to the grand jury[,] . . . there is no indication that the prosecution initiated by [the prosecutor] was predicated upon any semblance of improper motivation." <u>Basciano</u>, 2006 WL 3486774, at *2 (internal quotation marks and citation omitted); <u>see</u> <u>also</u> <u>Kindred</u>, 521 N.E.2d at 327 ("[T]o allow prosecutors to be disqualified merely upon the unilateral action of defendants, <u>e.g.</u>, filing lawsuits, would lead to absurd consequences."). Here, by contrast, the improper motivation – <u>i.e.</u>, the prosecutors' personal animus based on Mr. Zherka's proper exercise of free speech and the

prosecutors' potential political motivation for conducting a grand jury investigation – arose pre-indictment and through no unilateral action of Mr. Zherka.

## **CONCLUSION**

For the foregoing reasons, this Court must disqualify Prosecutors Jacobson and Carbone from pursuing this prosecution.

Dated:      New York, New York
            January 5, 2015

Respectfully submitted,

HAFETZ AND NECHELES LLP

By:    _____/s/_____
        Frederick P. Hafetz (FH 1219)
        Brian Doppelt (BD 0614)

60 East 42nd St., 36th Floor
New York, NY 10165
(212) 997-7400

*Attorneys for Defendant Selim Zherka*

714098800.3 04-Jan-15 12:44