UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA      :

    -v-                     :

                                         S3 14 Cr. 545 (CS)

SELIM ZHERKA, a/k/a "Sam Zherka,"    :
    a/k/a "Sammy Zherka,"

                                    :

                 Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## GOVERNMENT'S MOTIONS *IN LIMINE*

The Government respectfully submits the following *motions in limine*:  The defendant, for the reasons set forth herein, should be precluded from 1) adducing evidence or presenting arguments concerning the Government's and/or the prosecutors' supposed motivations in bringing the prosecution; 2) adducing evidence and/or presenting arguments to the effect that notwithstanding the allegations in the Indictment, the victim banks supposedly continue to conduct business with him; 3) adducing evidence that the loans in question were repaid and/or presenting arguments that the repayment of the loans shows that he did not commit the crimes of making false loan applications; 4) adducing evidence of the appraised value of the properties the purchase of which the defendant was seeking financing for and/or presenting arguments that the appraised value supported the purchase prices the defendant representing he was paying for those properties;  5) adducing evidence and/or presenting arguments concerning his *qui tam* action against Sovereign and/or what Sovereign Bank officials supposedly conveyed to the Federal National Mortgage Association ("FNMA") about his loan application in connection with his acquisition of the Tennessee apartment houses; 6) adducing evidence and/or presenting arguments concerning a) whether the defendant in fact assaulted Robert Ryan ("Ryan"), b)

1

whether the defendant in fact breached a contract with Ryan, c) whether Ryan reported the

assault in question to any law enforcement agency, d) whether the defendant was convicted of a

crime in connection with the Ryan assault, e) that judgments in New York State are not court

orders such that failure to pay a judgment is not a contempt of court, f) the fact that Ryan did not

seek to enforce the judgment by litigation for several years, g) the bona fides of Ryan's attorney,

Patrick Monaghan, to practice law in New York State, and h) the defendant's more recent motion

in New York State Supreme Court to set aside the verdict in the Ryan case and/or any decision

thereon; and 7) adducing evidence and/or presenting arguments concerning the refusal of

cooperating witnesses to be interviewed by defense counsel prior to trial.

## POINT ONE

**The defendant should be precluded from adducing evidence and/or presenting arguments concerning the Government's, the prosecutors', and/or the agents' supposed motivations in bringing the prosecution.**

The defendant has previously argued that he is being investigated and prosecuted because

of his political activity and his political views as expressed publicly and in his "newspaper," *The*

*Westchester Guardian.* He has also asserted in that "newspaper" that the prosecutors have

targeted him at the behest of Westchester County District Attorney Janet DiFiore in exchange for

assistance in procuring judgeships and/or a position with her husband's former law firm. And he

has sued two federal agents in this case in a *Bivens* action claiming they investigated him

because of his supposed Tea Party views. Evidence and/or argument as to any of the foregoing

before the jury trying this case would be entirely improper.

It is well-settled in this Circuit that:

> a defendant who advances a claim of selective prosecution *must do so in pretrial*
> *proceedings, see United States v. Taylor* 562 F.2d 1345, 1356 (2d Cir. [] 1977)
> [emphasis supplied]. The person asserting such a claim bears the burden of
> establishing prima facie both:  (1) that, while others similarly situated have not

generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, *i.e.*, based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights. *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir. 1974).

*United States v. Moon*, 718 F.2d 1210, 1229 (2d Cir. 1983) (emphasis supplied); *see also United States v. Stewart*, 590 F.3d 93, 121 (2d Cir. 2009) (same). A selective prosecution claim must be directed to the court, not the jury, because it raises an issue that is independent of the question of the defendants' guilt or innocence. *See United States v. Regan*, 103 F.3d 1072, 1082 (2d Cir. 1997).

Here, notwithstanding the defendant's assertions in his "newspaper" concerning the prosecutors or his law suit against the agents, he has not sought any discovery concerning a selective prosecution claim or moved to dismiss the Indictment on the basis of selective prosecution, and consequently he has waived his right to assert such a claim at all, let alone in front of the jury, which would be improper in any event. Consequently, any evidence or argument suggesting selective prosecution, or personal motivation of the prosecutors or agents in the investigation/prosecution of this case, and the like, should be precluded.[1] As a corollary, should one or more of the agents who are the defendants in the defendant's *Bivens* action take the stand, the defendant should be precluded from questioning him/them about that action. A defendant in a criminal case should not be permitted to sue an agent investigating him and then

---

[1] We also ask the Court to direct defense counsel that when questioning Government witnesses about any prior statements they may have made to the prosecutors they should not use the prosecutors' names, but rather refer to them generically (and not "Did you tell the prosecutor(s)/Assistant United States Attorney(s)...., but rather, "Did you tell a/an prosecutor(s)/Assistant United States Attorney(s)....."). Using the prosecutors' names during such questions or otherwise suggesting that the prosecutor or prosecutors in question is/are one or more of the Assistant United States Attorneys representing the Government at trial would implicate the unsworn witness rule and would personalize the case in a way that is unnecessary and inappropriate.

claim he or she has an economic motive in testifying against him as a result of that lawsuit.[2]
Beyond that, permitting the defendant to do that here would be to allow him to place before the
jury under a different guise the very kind of irrelevant and prejudicial evidence that caselaw
otherwise precludes.

## POINT TWO

**The defendant should be precluded from adducing evidence and/or presenting arguments to the effect that notwithstanding the allegations in the Indictment, the victim banks supposedly continue to conduct business with him.**

The defendant has long maintained that because the very banks that extended the loans in
question to him in this case continue to do business with and extend loans to him demonstrates
that those banks do not see themselves as victims, that they are not victims, and that he therefore
cannot be guilty of the false loan application counts. He is wrong on both the facts and the law.

There are three banks in this case that extended loans to the defendant: North Fork Bank
(now, Capital One), Sovereign Bank (now, Santander), and Signature Bank. To our knowledge,
neither Capital One nor Santander (whom the defendant is suing, *see infra*) conducts any
business with the defendant. One of the loan officers with whom the defendant dealt at Capital
One has since moved to Signature Bank, and the defendant continues to do business with them
and with that bank. But that fact proves nothing that is relevant to the false loan application
charges herein.

For instance, the bankers who were instrumental in extending the loans in question to the
defendant could, conceivably, have been complicit in his false loan application crimes. Indeed,
one of the bankers with whom the defendant dealt at Capital One and who is now at Signature,

---

[2] As a practical matter, even if – in the entirely implausible event that the defendant were to
prevail in his *Bivens* action – the agent(s) would likely be indemnified by the Government such
that they would suffer no personal financial loss.

invoked the Fifth Amendment and refused to be interviewed by the Government or testify when subpoenaed before the grand jury investigating this case.  And the banks themselves are large institutions that may value the defendant's business and may have concluded that it is in their interests to conduct business with him, notwithstanding the risks he poses to them based on his illegal conduct.  Indeed, during the financial crises in 2008 it was revealed that countless banks engaged in shoddy and questionable (if not criminal) lending practices because they (or their employees) *believed* it was in the banks' interests to do so.  Finally, the ultimate victim in a false loan application case is not the bank that extends the loan, but the Federal Deposit Insurance Corporation, which insures the bank's deposits and which plays no role in the extension of loans to the bank's customers.  Just as it is irrelevant in a Section 1014/false loan application case that a bank officer was involved in the false loan application scheme, *see United States v. Kennedy*, 564 F.2d 1329, 1340-1341 (9th Cir. 1977), so too must it be irrelevant that bankers look the other way and continue to do business with a defendant who engages in the kind of conduct charged in this case.[3]

If the defendant submitted a false loan application to a bank for the purpose of influencing the bank's lending decision, then he is guilty of violating Title 18, United States Code, Section 1014, irrespective of the bank's view of his conduct or the bank's (or bankers') subsequent actions in dealing with him.  In short, evidence that one or more bankers who were

---

[3] Even if a particular bank's desire to continue to do business with the defendant was legally relevant – which it is not – such relevance necessarily presupposes that the bank's employees were fully aware that the defendant made the numerous false statements in question to it.  If the defendant were permitted to adduce evidence that the bank continued to do business him, the Government would naturally seek to prove that the banker(s) who made that decision was/were not fully aware of the nature and scope of the false statements made by the defendant.  Thus, permitting the defendant to adduce such irrelevant evidence would  result in a frolic and detour that will waste time and undoubtedly lead to juror confusion.

involved in the lending decisions in this case may continue to do business with and/or extend loans to the defendant is entirely irrelevant to the false loan application charges herein.  And, asking the jury to conclude that the defendant is innocent of those charges based on the bankers' conduct in continuing to do business with the defendant would be asking them to speculate, something which, of course, juries are specifically instructed not to do.  Accordingly, the defendant should be precluded from offering such evidence and/or making such arguments.

**POINT THREE**

> **The defendant should be precluded from adducing evidence that the loans in question were repaid or presenting arguments that the repayment of any of the loans shows that he did not commit the crimes of making false loan applications.**

The law is clear that in a false loan application case, "[p]roof that an applicant did not intend to defraud the bank is irrelevant to whether he intended to influence the bank by false statements," *United States v. Sabbatino*, 485 F.2d 540. 544-545 (2d Cir. 1973), and accordingly, it is appropriate to exclude evidence of repayment of the loan, *id.*; *see also United States v. Lane*, 323 F.3d 568, 583 (7th Cir. 2003) ("Because the lack of loss is not a defense [to a Section 1014 prosecution], evidence regarding the lack of loss is irrelevant").  Thus, the defendant should be precluded from proving that he repaid any of the loans in question, and, should proof that any of those loans were repaid be admitted for some other purpose, the defendant should be precluded from arguing the repayment is evidence of his lack of intent to commit the crime of making a false loan application.  In short, the defense of "no harm, no foul" is no defense to the charges in this case.

\

## POINT FOUR

**The defendant should be precluded from adducing evidence of the appraised values of the properties he was purchasing with the bank loans in question and/or presenting arguments that the appraised values supported the purchase prices the defendant represented he was paying for those properties.**

It is typical in mortgage fraud cases for defendants to present evidence that contemporaneous appraisals supported the purchase prices they represented to the banks they were paying, that the banks relied almost exclusively on those appraisals in making lending decisions, that the banks' interests were fully protected when they so acted, and to then argue that the falsely inflated purchase prices or false statements about their own finances (*i.e.*, their assets, liabilities, and income) that they presented to the banks as part of their loan applications are consequently immaterial. We expect that the defendant may offer such evidence and make such arguments here. He should precluded from doing so.

To begin with, this is not a bank fraud case brought under Title 18, United States Code, Section 1344, but rather a false loan application case brought under Section 1014. Accordingly, materiality and reliance are not at issue in this case. *See United States v. Wells,* 519 U.S. 482, 484 (1997). Rather, a violation of Section 1014 "is a crime of subjective intent that requires neither reliance by the lending institution, nor actual defrauding for its commission." *United States v. Davis*, 752 F.2d 963, 969 (5th Cir. 1985) (internal citations and quotations omitted); *see also United States v. Kennedy*, 564 F.2d 1329, 1341 (9th Cir. 1977). "[I]f you make a knowingly false statement intending to influence a bank, it's no defense that you didn't succeed influencing it or *even that you couldn't have succeeded.*" *United States v. Phillips*, 731 F.3d 649, 652 (7th Cir. 2013) (emphasis supplied).

*United States v. Lane*, 323 F.3d 568 (7th Cir. 2003) is instructive in this regard. In *Lane*, where the defendant was charged with submitting a false loan application, he argued that the

lending bank relied only on the ability of another party to repay the loan and that, consequently, his personal guaranty and financial condition were immaterial. The District Court excluded any evidence tending to show that the bank did not rely on the defendant's financial condition – about which he had lied – in deciding whether to advance the financing in question. The Seventh Circuit affirmed, finding that the materiality of the defendant's guaranty and the bank's reliance on it were irrelevant to the charged crime (a violation of Section 1014). *Lane*, 323 F.3d at 582. Beyond that, the Court of Appeals made clear that it mattered not whether the defendant intended any harm (an element in bank fraud), but only whether he intended to make a false statement "for the purpose of influencing in any way the action of the lending institution." *Id.* (internal quotations and citations omitted).

Likewise, here it matters not whether the lending banks relied on the defendant's false statements about purchase prices, down payments, or his own financial condition, or relied on other information – including appraisals – in making lending decisions. The only issue for the jury is whether the defendant knowingly made false statements in his loan application "for the purpose of influencing the bank in any way." Accordingly, the Court should exclude evidence and argument concerning the appraisals.

### POINT FIVE

**The defendant should be precluded from adducing evidence and/or presenting arguments concerning his *qui tam* action against Sovereign and/or what Sovereign Bank officials supposedly conveyed to the Federal National Mortgage Association ("FNMA") about his loan application in connection with his acquisition of the Tennessee apartment houses.**

The loans that the defendant used to finance his purchase of the Tennessee apartment houses (Count Six) were extended by Sovereign under an agreement with the Federal National Mortgage Association ("FNMA" or "Fannie Mae"). Pursuant to this agreement, Sovereign

underwrote the loans in question, closed on them, and then sold them back to FNMA.  In

September 2012, well after learning he was under investigation in this case, the defendant

brought a *qui tam*/whistle-blower suit against Sovereign in the Eastern District of New York,

claiming that Sovereign intentionally misled FNMA concerning the loan. *United States ex rel.*

*Sam Zherka v. Sovereign Bank*, EDNY Dkt. No. 12 Civ. 4464 (SLT**)**.   In particular, he alleged in

that suit that Sovereign misrepresented to FNMA what his assets were and the amount of capital

that he was investing into the acquisition of the Tennessee apartment houses.[4]

The fact that the defendant brought the *qui tam* action, the complaint in that action, and

any evidence is support of that complaint are all entirely irrelevant to the case at bar.  The

defendant is on trial for his false statements to Sovereign, statements contained in various

submissions he made to bank.  Even assuming – without conceding – Sovereign, in turn, made

false statements to FNMA, evidence of the same would be entirely irrelevant to the jury's

determination of whether the defendant made false statements to Sovereign in order to influence

Sovereign to approve the loan.  Beyond that, introduction of evidence of what Sovereign

communicated to FNMA would be unnecessarily time-consuming and unfairly prejudicial to the

Government. It would confuse the jury as to the real issues in this case, and, assuming, without

conceding, that the defendant can back up his claim, would improperly suggest to the jury that

the defendant's actions should somehow be excused because the victim bank acted improperly in

connection with the same loan.  Accordingly, the defendant should be precluded from adducing

evidence of the *qui tam* action and/or supporting the defendant's claims therein.

---

[4] A *qui tam* action is initially filed under seal for a six month period during which the
Government decides whether to join the plaintiff in the action.  In the instant case, the
Government, by the United States Attorney for the Eastern District of New York, declined to
join the action because it was of the view that the defendant's complaint lacked any merit.

9

## POINT SIX

**The defendant should be precluded from adducing evidence and/or presenting arguments concerning the underlying merits of the Ryan assault/breach of contract action and other irrelevant matters related to the Ryan litigation.**

In 2007, when applying for $63.5 million in loans from Sovereign towards the acquisition of several apartment house complexes in Tennessee, the defendant was asked to explain the outstanding Ryan judgment. Here is what he said:

> the [*sic*] Robert Ryan judgement [*sic*] came from an incident from a lounge i [*sic*] owned in NYC. A man, Robert RyAN [*sic*] was at my establishment, got drunk, left, [*sic*] my establishment and was severely hurt. I was sued, and he received a judgment in this amount. I clearly had nothing to do with it, but the jury thought that my establishment namely my employees should have been more responsible, and not allowed it to happen.

E-mail of defendant to Seth Grossman of April 5, 2007, attached hereto as Exhibit A; Indictment ¶ 9(c).[5]

The defendant's statement to Sovereign concerning the Ryan judgment (Count Six) is false – and is alleged to be false in the Indictment – because it a) mischaracterizes the nature of Ryan's law suit, b) mischaracterizes the nature of the jury's verdict, and c) omits a material fact, namely, that in addition to holding him liable for the assault on Ryan, the jury found him liable for breach of contract. Indeed, by letter dated December 24, 2014, in response to the defendant's requests for particulars, we stated as follows:

> Finally, lest there be any doubt concerning Paragraph 9(c) of the Indictment (Count Six), we do not intend to prove up at trial that the defendant actually assaulted Ryan or actually breached his contract with him. What we will prove is that – as alleged in the Indictment – Ryan sued the defendant for assault and breach of contract, the case was tried before a jury, Ryan won a judgment against the defendant, and Ryan was awarded damages for assault and breach of contract.

---

[5] The e-mail is from "laconia123@aol.com" – an email address used by the defendant – and is "signed" "sammy z." It is addressed to Seth Grossman, the defendant's mortgage broker in connection with the Tennessee transaction, who in turn forwarded the defendant's explanation to the bank.

We will prove that the statement your client made to Sovereign about the Ryan judgment is false because: it mischaracterizes the lawsuit as a negligence case (it was case where intentional assault and breach of contract were alleged); it mischaracterizes what the jury found (it found the defendant liable for assault, not liable for negligence under a dram shop/respondeat superior theory); and because it omits the fact that the jury found the defendant liable, and awarded Ryan damages, for breach of contract as well.

Accordingly, the defendant should be precluded from proving up any of the following:

**a) whether he in fact assaulted Robert Ryan ("Ryan")** -- Whether the defendant in fact assaulted Ryan as alleged in Ryan's law suit is irrelevant to any of the issues the jury must decide. The Indictment is this case never alleges that the defendant assaulted Ryan; it merely states that Ryan stated as much in his complaint, that the jury that heard the case awarded Ryan damages for assault, and that the defendant has never paid the judgment, but instead has schemed to defraud Ryan of his right to collect it.  In these circumstances, retrying the *Ryan v. Zherka* case would be unnecessarily time-consuming and unfairly prejudicial to the Government.

As far as the false loan application charge (Count Six) is concerned, even if Ryan had not assaulted the defendant, and further, even if,  assuming, without conceding, the defendant was able to prove as much, his statements to Sovereign would still be false:  1) Ryan's complaint was one for battery, not negligence; 2) the jury could not have concluded that Ryan had too much to drink and was injured on the way home as there was no evidence whatsoever at the *Ryan v. Zherka* trial that Ryan had anything to drink (let alone that he was drunk) or that he was in injured on his way home (as opposed to in the night club).

And as far as the wire fraud charge (Count Thirty-Four) is concerned, even if Ryan had not assaulted the defendant, and further, even if,  assuming, without conceding, the defendant was able to prove as much, he would still have defrauded Ryan of his right to collect the judgment.  Ryan had a valid judgment from the Supreme Court of the State of New York.  And

unless and until the defendant was successful in setting aside that judgment, Ryan had a right to enforce it and the defendant had no right to scheme to defeat it by, among other means, lying under oath when deposed by Ryan about his assets.

Finally, aside from the fact that evidence as to whether Ryan in fact assaulted the defendant is irrelevant and unduly prejudicial, admitting such evidence would be contrary to public policy. There is a strong public policy – as exhibited by the passage of Title 18, United States Code, Section 1014 – in insuring that those applying for loans from federally insured banks make accurate statements in their loan applications. The defendant was not entitled to lie to the bank about the nature of Ryan's complaint or the jury's verdict merely because he disagreed with the outcome of the case and/or believed that he had not assaulted Ryan.[6]  To allow the defendant to prove up whether or not he actually assaulted Ryan would, in effect, be to say that his false statements to the bank were somehow justified based on what he believed was a miscarriage of justice in the underlying case. That is not a lawful defense, and permitting it to be presented to the jury would make for poor public policy as well.

Likewise, society has an obvious interest in seeing to it that the judgments of courts are enforced. And the defendant was not entitled to lie under oath when deposed by Ryan about his assets, or to place those assets beyond Ryan's reach, merely because he believed he had not assaulted Ryan. To hold otherwise, and to allow the defendant here to prove up whether or not he actually assaulted Ryan, would be to say that the defendant's perjury was somehow justified

---

[6] In fact, the defendant could just as easily have said to the bank: "Ryan sued me for assault and breach of contract. The case went to a jury trial and the jury found for Ryan on both counts. Notwithstanding that, I did not assault Ryan or breach any contract with him." Instead, he chose to lie to the bank, lies which were neither lawful nor justifiable, whatever the bona fides of Ryan's complaint.

based on what he purportedly believed was a miscarriage of justice in the underlying case. Again, that is not a lawful defense and would make for poor public policy indeed.

**b) whether he in fact breached a contract with Ryan** -- Evidence as to whether the defendant in fact breached a contract with Ryan as alleged in Ryan's law suit is irrelevant and unduly prejudicial for the same reasons.

**c) whether Ryan reported the assault in question to any law enforcement agency** – Evidence as to whether Ryan reported the assault in question to any law enforcement agents is irrelevant and unduly prejudicial for the same reasons.

**d) that the defendant was not arrested and/or convicted of a crime in connection with the Ryan assault** – Evidence as to whether the defendant was arrested and/or convicted of a crime in connection with the assault on Ryan is irrelevant and unduly prejudicial for the same reasons.

**e) whether judgments in New York State are court orders such that failure to pay a judgment is a contempt of court** – The defendant has previously argued – in connection with the bail proceedings – that:  i) judgments in New York State are not court orders; ii) failure to pay judgment is therefore not punishable by contempt; and iii) a judgment debtor has no affirmative obligation to pay a judgment, rather, it is incumbent of the judgment creditor to seek to enforce the judgment if he can.  But whether or not failure to pay a civil judgment in New York State is punishable by contempt, does not mean that a judgment does not obligate the judgment debtor to pay the judgment creditor the amount that is due to him under the judgment. And, in any event, the defendant's perverse "catch me if you can" notion of justice did not entitle him to frustrate Ryan's ability to realize the judgment by a) lying about his assets during a post-judgment deposition taken in order to discover them and/or b) placing those assets beyond

13

Ryan's reach.  Admitting evidence that a New York State judgment is not an a court order punishable by contempt would improperly suggest to the jury that the defendant was free to ignore it and/or obstruct it.  Accordingly, evidence as to whether judgments in New York State are court orders such that failure to pay a judgment is a contempt of court is irrelevant and unduly prejudicial.[7]

**f) that Ryan did not seek to enforce the judgment by litigation for several years –** Likewise, the fact that Ryan may not have sought to enforce the judgment for a number of years is entirely irrelevant.  The defendant had an affirmative duty to pay the judgment whether or not Ryan sought to enforce it.  And whether or not Ryan sought to enforce the judgment, the defendant had no right to lie about his assets when deposed concerning them or to attempt to place them beyond Ryan's reach.  If evidence or argument to the effect that Ryan "sat on his rights" is admitted,  it will allow the jury to draw the impermissible inference that the defendant's actions in this regard were somehow justified.  Accordingly, evidence that Ryan did not seek to enforce the judgment by litigation for several years is irrelevant and unduly prejudicial.

**g) the bona fides of Ryan's attorney, Patrick Monaghan, to practice law in New York State --** The Government expects to call Patrick Monaghan, Esq. – the attorney representing Ryan in connection with Ryan's attempts to realize the 2000 judgment against the defendant – as a trial witness.  The defense should be precluded from cross-examining Monaghan as to his bona fides to practice law in the State of New York.

Monaghan is licensed to practice law in New Jersey and New York and resides in New Jersey.  He is representing Ryan in *Ryan v. Zherka et al.*, Index No. 69626/2013, an action in the

---

[7] For the same reasons, the defendant is not entitled to a jury charge to the same effect.

14

Supreme Court of New York (Westchester County),  wherein Ryan is seeking to attach property

belonging to the defendant in order to satisfy – in part – the 2000 judgment.  The action was

commenced by order to show cause by which Ryan sought a preliminary injunction restraining

certain of the defendant's assets.  The defendant, in the first instance, sought to defend that

action by, *inter alia*, challenging Monaghan's *bona fides* to practice law in New York State.  In

particular, at  a February 7, 2014 conference on the order to show cause, the defendant claimed

that Monaghan was perpetrating a "fraud" by practicing law in New York while not maintaining

offices in this state as required by New York Judiciary Law § 470.  We expect that the defendant

will resort to such tactics when Monaghan testifies in this case.  For the reasons set forth below,

he should be precluded from doing so.

   First, the defendant's claim has no basis in fact.  As set forth in the Affirmation of

Juvenal L. Marchisio, Esq., attached hereto as Exhibit B, Monaghan, a former law partner of

Marchisio, has the use of Marchisio's law offices in New York City.  And, New York State

Supreme Court Justice Francesca E. Connolly, in a Decision and Order dated November 18,

2014, a copy of which is attached hereto as Exhibit C,  although explicitly rejecting numerous

arguments the defendant had made at the above February 7, 2014 conference, presumably felt

that the issue the defendant had raised concerning Monaghan's *bona fides* to practice law in New

York State was so *de minimis* that she did not even bother to address it in her opinion.

   Second, the constitutionality of New York Judiciary Law § 470 is not at all settled.  New

York  State's requirement that non-resident attorneys maintain an office in the state for the

practice of law was challenged in *Schoenfeld v. New York*, 748 F.3d 464 (2d Cir. 2014).  The

Court of Appeals opined that "it appears that Section 470 discriminates against nonresident

attorneys with respect to their fundamental right to practice law in the state and, by virtue of that

fact, its limitations on non-resident attorneys implicate the Privileges and Immunities Clause." *Id.* at 469.  But, before ruling on the issue, the Court of Appeals first certified to the New York State Court of Appeals the question of "what are the minimum requirements necessary to satisfy [the requirement that a nonresident attorney maintain an 'office for the transaction of law business' within the state of New York]?" *Id.* at 471.  That court accepted the certification, but has not yet ruled. *See also Ethics Opinion 2014-2*, New York State Bar Association Committee on Professional Ethics (citing *Schoenfeld, supra*, and stating, "While a conclusive interpretation of Section 470 awaits the decision of the New York Court of Appeals, one clear inference that can be drawn from the Second Circuit ruling is that New York lawyers do not require a traditional office in order to maintain appropriate levels of 'accessibility and communication with clients'").

Thus, cross-examination of Monaghan about his bona fides to practice law in New York State would:  i) not be relevant to the issues in this case; ii) not be relevant to Monaghan's credibility as a witness; iii) be confusing, a waste of time, and unduly prejudicial.  Accordingly, cross-examination on this issue should be precluded.

**h) the defendant's motion to set aside the judgment in the Ryan case** – On January 15, 2015, the defendant, pursuant to New York Civil Practice Laws and Rules § 5015, moved to set aside the verdicts in *Ryan v. Zherka et ano*, Index No. 601678/1997 (Supreme Court of the State of New York (County of New York)), claiming that in July 2014 he came into possession of newly discovered evidence warranting such relief ("the Set-Aside Proceeding").  The evidence in question appears to be the very same evidence the defendant presented to this Court in an attempt to undermine the Ryan judgment during the bail proceedings – evidence that, ultimately, this Court found to be unpersuasive. *See* Transcript of October 23, 2014 at 62.  But

evidence as to whether the defendant in fact assaulted Ryan should be precluded irrespective of the outcome in the Set-Aside Proceeding, because, as set forth above, the defendant's false statements do not go to whether Ryan assaulted him, but rather what the allegations and the jury's findings in the underlying case were. Beyond that, and for the very same reasons, the jury in this case should not hear evidence concerning the Set-Aside Proceeding or any outcome of that proceeding.

## POINT SEVEN

**The defendant should be precluded from adducing evidence and/or presenting arguments concerning the refusal of cooperating witnesses to be interviewed by defense counsel prior to trial.**

It has come to the Government's attention that defense counsel have sought to interview some of the cooperating witnesses in this case prior to trial by making written requests addressed to counsel for those witnesses, and that the witnesses, through their counsel, have refused to do so. We anticipate that defense counsel will seek to cross-examine those witnesses at trial by, *inter alia*, asking them about such refusals and that they will argue to the jury that such refusals demonstrate bias on the part of the witnesses. They should be precluded from doing so.

While a defendant is granted substantial leeway in cross-examining a witness to discover bias,

> [i]t does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. And as we observed earlier this Term, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.

*Delaware v. Van Arsdall*, 475 U.S. 673 (1986) (internal quotations and citations omitted; emphasis in original).  Thus, for instance, in *United States v. Tipton*, 90 F.3d 861, 889 (4th Cir. 1996), the Court of Appeals found no violation of the defendants' confrontation rights in the District Court's preclusion of cross-examination of protected witnesses about their refusals to submit to interviews by defense counsel because it found that, "[t]he motives and biases of all these witnesses were otherwise freely exposed to cross-examination [and t]he restriction imposed was well within the district court's discretion."

In the case at bar, subjecting the cooperating witnesses (all of whom are represented by counsel) about their refusals to submit to pre-trial defense counsel interviews would necessarily provoke an inquiry into privileged matters – as all of the refusals were counselled – and would also open the door to testimony concerning the witnesses' security concerns vis-á-vis the defendant.[8]  In any event, defense counsel will have ample opportunity to cross-examine the cooperating witnesses for bias, based on, among other things, their cooperation agreements, such that the marginal relevance of their refusals to meet with defense counsel will be more than outweighed by the other concerns we have raised.

Beyond that, several banker witnesses whom we expect the defense will attempt to call at trial – all of whom were represented by the same attorney as a result of referrals from counsel for the defendant – when subpoenaed by the grand jury prior to the Indictment in this case invoked the Fifth Amendment and refused to either testify or be interviewed by us.  It would likely be error for the Government to cross-examine these witnesses about those refusals.  *See United*

---

[8] These concerns, given the defendant's proclivity for violence – and, notably, violence committed with the aid and assistance of others (including his brother, who is at liberty) – are not *de minimis*, nor are they made so by the defendant's jail status.  And the cooperating witnesses fear of retribution from the defendant and/or his associates has been, is, and continues to be, very real.

*States v. Natale*, 526 F.2d 1160, 1171 (2d Cir. 1975). On the other hand, it would unnecessarily skew the truth for the defense to be able to inquire into the refusal of Government witnesses to meet with it, but for Government to be precluded from making the same inquiry of defense witnesses.

Accordingly, the defendant should be precluded from questioning the cooperating witnesses about their refusal to be interviewed by defense counsel and/or making arguments to the jury concerning the same.

### Conclusion

For the reasons set forth herein, the Government's motions *in limine* should be granted.

Dated:  White Plains, New York
April 17, 2015

PREET BHARARA
United States Attorney
Southern District of New York

By: _____
PERRY A. CARBONE
Co-Chief, White Plains Division

_____
ELLIOTT B. JACOBSON
Assistant United States Attorney

_____
ANDREW J. KAMEROS
Special Assistant United States Attorney

# EXHIBIT A

A040

——Original Message——
From: laconia123@aol.com <laconia123@aol.com>
To: Seth Grossman
Sent: Thu Apr 05 15:01:12 2007
Subject: Re: TN derogatory items

the hypothecators mortgage thing, i have no idea what that is, never even heard of it, if you have some documents on it, send it to me, so i can address it.  where did you get this from? the Robert Ryan judgement came from a an incident from a lounge i owned in NYC. A man, Robert RYAN, was at my establishment, got drunk, left my establishment and was severely hurt.  i was sued, and he received a judgement in this amount. i clearly had nothing to do with it, but the jury thought that my establishment, namely my employees, should have been more responsible, and not allowed it to happen.

sammy z

——Original Message——
From: SGrossman@meridiancapital.com
To: laconia123@aol.com
Sent: Thu, 5 Apr 2007 1:25 PM
Subject: FW: TN derogatory items


Can you help me with these – I think I know one of them.

Thanks,

seth


Seth Grossman
Meridian Capital Group
2385 Executive Center Drive 4th Floor
Boca Raton, FL  33431
561.367.0005 phone
561.362.3252 direct
561.367.0099 fax
561.703.5269 cell
sgrossman@meridiancapital.com <mailto:sgrossman@meridiancapital.com>


From: Kurrle, David J [mailto:DKurrle@sovereignbank.com
<javascript:parent.ComposeTo("DKurrle%40sovereignbank.com", "");> ]
Sent: Wednesday, April 04, 2007 1:58 PM
To: Seth Grossman
Subject: Fw: TN derogatory items

I need an explenation for these derag accounts for FNMA.

—— Original Message ——
From: Rochford, Brian M
To: Kurrle, David J

Sent: Wed Apr 04 13:57:05 2007
Subject: TN derogatory items

Here is a list of the derogatory items we need info on:

An account that is currently in collection with Greenwich Propane ($1,101)
$425,647 Judgment with Ryan, Robert 9/26/2000
$909,750 Judgment with Hypothecators Mortgage Company 10/26/1992


Brian Rochford
Sovereign Bank
National Commercial Real Estate Lending
195 Montague Street
Brooklyn, NY 11201
Office: 347-563-9390
Fax: 718-797-1595
E-mail: brochfor@sovereignbank.com <javascript:parent.ComposeTo("brochfor%40sovereignbank.com", "");>

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail, and delete or destroy the message. Thank you.

---

AOL now offers free email to everyone. Find out more about what's free from AOL at AOL.com <http://www.aol.com?ncid=AOLAOF00020000000437> .

# EXHIBIT B

FILED: WESTCHESTER COUNTY CLERK 03/28/2014
NYSCEF DOC. NO. 42                                    2125416980
MAR. 28, 2014 10:02AM

INDEX NO. 69626/2013
RECEIVED NYSCEF: 03/28/2014
NO. 3168    P. 2

PAGE 1/2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
--------------------------------------------X
ROBERT S. RYAN,

                     **Plaintiff,**

-against-

THE ZHERKA FAMILY IRREVOCABLE TRUST,
SELIM ZHERKA, DOMINICA O'NEIL, ERIC
WUGHALTER, ESQ., THE LAW FIRM OF
ROGERS, WUGHALTER AND KAUFMAN, JOHN
DOES 1-10, JANE DOES 1-10, and JOHN DOE
ENTITIES 1-10,

                  **Defendants.**
--------------------------------------------X

Index No. 69626/2013

AFFIRMATION OF
JUVENAL L. MARCHISIO,
ESQ.

JUVENAL L. MARCHISIO, an attorney duly admitted to practice before the Courts of the State of New York, hereby affirms as follows:

1. I am a former law partner of Patrick J. Monaghan, Jr., Esq. We practiced together for many years. For many years the law offices of the then Firm Monaghan, Monaghan, Lamb and Marchisio, LLP were located at 150 West 55th Street, New York, New York. Several years ago, I reduced my active practice but still maintain and conduct a law practice at an apartment located at 401 East 65th Street, Suite 10C, New York, New York.

2. Since Mr. Monaghan joined Beattie Padovano, LLC in 2010, he and I have collaborated on certain legal matters and he has had use of and access to my New York address, at any and all

                        I

1179424_1\110063

times, in connection with his law practice.   Accordingly, Mr.
Monaghan enjoys the following privileges at 401 East 65th Street,
Suite 10C, New York, New York:

      a. He may receive mail and other deliveries, including
         service of process;

      b. He may receive facsimile communications;

      c. He may use the office space for meetings, closings,
         depositions, testamentary executions or any other law-
         related conference; and

      d. He may receive telephone calls and voice messages left
         there.

    3.   In addition, the answering message on our voicemail
machine at 212-541-6890 still identifies the Firm as Monaghan,
Monaghan, Lamb & Marchisio.

March 28, 2014

                                  Juvenal L. Marchisio

2

TT79424_1\110063

# EXHIBIT C

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
------------------------------------------------------------X

ROBERT S. RYAN,

        Plaintiff,

-against-

THE ZHERKA FAMILY IRREVOCABLE TRUST,
SELIM ZHERKA, DOMINICA O'NEIL, ERIC
WUGHALTER, ESQ., THE LAW FIRM OF ROGERS,
WUGHALTER AND KAUFMAN, JOHN DOES 1-10,
JANE DOES 1-10, and JOHN DOE ENTITIES 1-10.

        Defendants.

------------------------------------------------------------X

Index No. 69626/2013

**DECISION AND ORDER
WITH NOTICE OF ENTRY**

SIRS/MESDAMES:

    Please Take Notice that the attached is a Decision and Order entered by the Supreme

Court of the State of New York, County of Westchester on November 18, 2014.

Dated: November 19, 2014

BEATTIE PADOVANO, LLC
Attorneys for Plaintiff Robert S. Ryan

By: _____
    Patrick J. Monaghan, Jr..
    50 Chestnut Ridge Road, Suite 208
    P.O. Box 244
    Montvale, New Jersey 07645
        -and-
    401 East 65th Street, Suite 10C
    New York, NY 10065

TO:

Tilem & Campbell, P.C.
Attorneys for the defendants Zherka Family Irrevocable Trust,
    Dominica O'Neil, and John Doe defendants
188 East Post Road
White Plains, NY 10601
By Mail

2198166_1\110063

Selim Zherka
Defendant, pro se
4 Hageman Court
Katonah, NY 10536
By Mail

Selim Zherka
Defendant pro se
Metropolitan Correctional Center
Register No. 71500-054
150 Park Row
New York, NY 10007
By Mail

Office of Corporation Counsel of the City of Yonkers
40 South Broadway
Yonkers, NY 10701
By Fax: (914) 964-0563

2

2198166_1\110063

INDEX NO. 69626/2013

NYSCEF DOC. NO. 53

RECEIVED NYSCEF: 11/18/2014

To commence the statutory time for appeals as of right
(CPLR 5513[a]), you are advised to serve a copy
of this order, with notice of entry, upon all parties.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
-----------------------------------------------------------------x
ROBERT RYAN,

                 Plaintiff,                          DECISION and ORDER
                                                 Sequence No. 1
        -against-                            Index No. 69626/2013

THE ZHERKA FAMILY IRREVOCABLE TRUST,
SELIM ZHERKA, DOMINICA O'NEIL, ERIC
WUGHALTER, ESQ., THE LAW FIRM OF ROGERS,
WUGHALTER AND KAUFMAN, JOHN DOES 1-10,
JANE DOES 1-10, and JOHN DOE ENTITIES 1-10,

                           Defendants.
-----------------------------------------------------------------x
CONNOLLY, J.

    The following papers were considered in connection with the plaintiff's motion for a
preliminary injunction and other related relief:

| | |
|---|---|
| Order to show cause, affidavit, affirmations, memo of law, exhibits | 1-19 |
| Affidavits of service (Kafafian and Gilbrech) | 20-21 |
| Wughalter affirmation in opposition dated February 3, 2014 | 22 |
| So-ordered stipulation (DiBella, J.) dated February 7, 2014 | 23 |
| Defendants' affirmation in opposition, affidavit, memo of law, exhibits | 24-30 |
| Reply affirmation, affidavit, memo of law | 32-35 |

    According to the complaint, on September 26, 2000, following the trial of an action entitled
*Ryan v Zherka, et. al.* (New York County Index No. 601678/1997), the plaintiff Robert Ryan
(hereinafter Ryan) obtained a judgment in his favor and against the defendant Selim Zherka
(hereinafter Zherka) in the principal sum of $125,647.67 (Hon. Norman Ryp, J.S.C.). On June 16,
2011, a renewal judgment was entered in Rockland County and, on October 10, 2012, the judgment
was amended by Supreme Court, New York County, to add ABCZ Corp. as an additional judgment
debtor and to reflect a current balance on the judgment of $248,849.67 (Hon. Jeffery K. Oing,
J.S.C.).

    Ryan commenced the instant action to enforce that judgment. Ryan alleges that Zherka settled
an action against the City of Yonkers (hereinafter Yonkers) entitled *Zherka v Amicone, et al.*

-1-

(Westchester Index No. 30139/2010) for the sum of $100,000. On February 2, 2010, Zherka executed an assignment of his interest in *Zherka v Amicone* to the defendant Zherka Family Irrevocable Trust (hereinafter ZFIT). In response to a restraining notice served by Ryan upon Yonkers, Ryan was informed, by letter dated May 23, 2013, that $75,000 had been transferred to the defendant Law Firm of Rogers, Wughalter and Kaufman (hereinafter RWK) as counsel for ZFIT,[1]

Accordingly, the complaint in this action seeks to declare the assignment of Zherka's interest in *Zherka v Amicone* to ZFIT to be void as a fraudulent conveyance, to direct the turnover of the $75,000 held in escrow to Ryan in partial satisfaction of the judgment, to direct an accounting of ZFIT's transactions since its creation in May 2009, and for an award of attorneys' fees and costs. The complaint also seeks to hold Dominica O'Neil (hereinafter O'Neil), an alleged trustee of ZFIT, personally liable for the fraudulent conveyance.[2]

Ryan now moves by order to show cause for an order: (1) permitting court-substituted service upon ZFIT, O'Neil, and Zherka pursuant to CPLR 308 (5) nunc pro tunc; (2) for a preliminary injunction staying disbursement of the $75,000 from RWK's escrow account; (3) directing RWK to turn over the $75,000 in partial satisfaction of the judgment;[3] (4) directing the turnover of any future settlement funds paid in connection with *Zherka v Amicone* in satisfaction of Ryan's judgment; (5) the appointment of a receiver to "take possession of all assets and properties of [Zherka] and collect, lease, and sell any real or personal property in which Zherka and his alter egos have interest and pay over such funds in satisfaction of Plaintiff's outstanding judgment;" (6) for expedited discovery and an accounting of ZFIT and its trustee, O'Neil; and (7) to enjoin any transfers into or out of ZFIT pending completion of a judicial accounting.

The defendants O'Neil and ZFIT oppose the motion. Zherka has defaulted in opposing the motion.[4]

---

[1] Disbursement of the funds held in escrow has been stayed by various orders of the Supreme Court, New York County (Oing, J), and by temporary restraining order in the instant action (DiBella, J.).

[2] In the caption and complaint, Ms. O'Neil's name is spelled with one L; however, her name is spelled "O'Neill," with two L's, in her affidavit in opposition.

[3] By so-ordered stipulation dated February 7, 2014 (DiBella, J.), the funds were transferred to the escrow account of the defendants' current attorneys, Tilem & Associates, P.C. (hereinafter Tilem & Associates), and the action has since been discontinued against RWK and the defendant Eric Wughalter, Esq.

[4] In the opposition papers, Peter H. Tilem, Esq., of Tilem & Associates purports to be "the attorney of record for Defendants" (Tilem Affirmation ¶ 1), without specifying exactly who he represents. Tilem's papers also confusingly state that he is attorney for the "defendant" (singular) and the attorney for the "petitioner" (*see* Memorandum of Law [cover page and signature page]). However, the Court notes that Zherka personally appeared in this action to the extent that he executed, as "Sam Zherka, pro se," a stipulation dated February 7, 2014 establishing a briefing scheduling for the instant motion and discontinuing as against RWK. Tilem executed that stipulation as attorney for ZFIT and O'Neil. Further, it is noted that, although Tilem is Zherka's attorney of record in *Ryan v Zherka* (New York County Index No. 601678/1997) (*see* Plaintiff's Exhibit B [Transcript dated January 10, 2014]), according to the New York State Courts Electronic Filing system ("NYSCEF"), Tilem does not represent

### DISCUSSION

I. Motion for court-ordered service on Zherka, O'Neil, and ZFIT pursuant to CPLR 308 (5)

Ryan contends that serving the defendants Zherka, O'Neil, and ZFIT has proved impracticable, and requests that his prior attempts at service be deemed sufficient to constitute court-ordered service pursuant to CPLR 308 (5). Ryan attempted to serve Zherka by e-mail and personal delivery to Tilem, his attorney of record in *Ryan v Zherka*, and by delivering the summons and complaint to a person of suitable age and discretion at 4 Hageman Court, Katonah, NY 10536, a residence allegedly owned by ABCZ, Corp. for the benefit of Zherka and his family. Ryan attempted to serve O'Neil by delivering the summons and complaint to the office of RWK and attempted, but was refused entry, to serve her at an office located at 240 North Avenue, Suite 212, New Rochelle, NY, where a sign is posted listing "Dominica O'Neill" as an occupant (*see* Kafafian Affirmation dated January 28, 2014 ¶ 4 and Exhibit B; Gilbrech Affidavit dated February 6, 2014 at Exhibit A). Ryan also attempted to serve O'Neil and ZFIT by e-mail and personal delivery to RWK, who are ZFIT's attorneys of record in *Ryan v Zherka*, and at 240 North Avenue, Suite 212, where his process server was denied entry.

In opposition, the defendants contend that Ryan has not shown that service pursuant to the usual methods is impracticable, arguing that Ryan failed to establish that his process server could not have affixed the summons and complaint to the door of the office where service was attempted.

In reply, Ryan's counsel affirms: "On February 7, 2014, when all parties appeared before [Justice DiBella] to argue the preliminary injunction, I personally served Selim Zherka [by] handing him copies of the Summons and Complaint in this action. Though Mr. Zherka would not grab the papers, I touched him with the documents which then fell to the floor and remained there" (Monagan Affirmation dated March 21, 2014).

The motion is granted as to Zherka

CPLR 308 (5) provides that service may be made upon a natural person "in such manner as the court, upon motion without notice, directs, if service is impracticable under paragraphs one, two and four of this section." In an appropriate case, a court may deem a method of service previously attempted by the plaintiff as a method of court-ordered service pursuant to CPLR 308 (5), and direct that the prior attempt at service be recognized as nunc pro tunc compliance with such court-ordered method of service (*see Morgan Guaranty Trust Co. of New York v Hauser*, 183 AD2d 683 [1ˢᵗ Dept 1992] [where movant established that service pursuant to CPLR 308 (1), (2), and (4) was

---

Zherka in this action, nor is he authorized to accept service via e-filing on Zherka's behalf (*see* NYSCEF - Case Detail). Accordingly, Zherka—who has was undoubtedly on notice of this order to show as evidenced by his entering, pro se, into a stipulation establishing a briefing schedule for the instant motion—is in default in opposing the motion.

impracticable "alternate service *should be recognized nunc pro tunc* as of the November 26, 1990 attempt to serve appellant pursuant to CPLR 308 (2)" (emphasis added)]; *FDIC v Weise Apartments--44457 Corp.*, 2000 US Dist. LEXIS 11998, *14-15 [SDNY 2000] ["The Court finds, further, that the record before it demonstrates that it was impracticable for plaintiff to serve Weise in accordance with those provisions of the CPLR. Therefore, an approval, nunc pro tunc to June 5, 1998, of plaintiff's service upon Weise by mailing process to his rented mailbox, is appropriate and permissible under CPLR § 308(5)"]).

   With respect to Zherka, Ryan's request for an order deeming service complete pursuant to CPLR 308 (5) is academic in light of Ryan's attorney's personal service of the summons and complaint upon Zherka, on February 7, 2014, in this courthouse (*see* Siegel, NY Prac § 66 [5th ed.] ["if the defendant does not [accept papers handed to him or her], the process server need only leave the summons on a table or other item nearby, or on the floor in front of the defendant"]). Moreover, Ryan's delivery of the summons and complaint to Zherka's residence, the subsequent mailing, and the filing of proof of service facially constitute completed service upon Zherka pursuant to CPLR 308 (2). In any event, Ryan has established Zherka has consistently attempted to frustrate attempts at service and that Zherka did receive actual notice of this action as evidenced by his pro se appearance in opposition to the order to show cause. Because of the impracticability posed by Zherka's attempts to evade service, the Court additionally deems Ryans' service upon Tilem & Associates, Zherka's attorney of record in *Ryan v Zherka*, to constitute court-ordered service pursuant to CPLR 308 (5), and such service shall be recognized nunc pro tunc to the date that Tilem & Associates were served with the summons and complaint (*see Morgan Guaranty Trust Co. of New York v Hauser*, 183 AD2d 683 [2d Dept 1992] [where movant established that service pursuant to CPLR 308 (1), (2), and (4) was impracticable "alternate service should be recognized nunc pro tunc"]).

   To afford Zherka an opportunity to respond to the complaint, the Court directs that he shall have 30 days from service upon him of this order with notice of entry at his last known address to answer or otherwise appear in this action (*see* CPLR 320 [a]).

<u>The motion is denied as to O'Neil and ZFIT</u>

   As an initial matter, to acquire jurisdiction over an express trust, the real party in interest who must be named and served is the trustee (*see* CPLR 1004; *see also* Siegel, NY Prac § 66 [e] [5th ed.] ["Assuming jurisdictional basis, the question of whom to serve in an action against an estate or trust is merely a matter of identifying the real party in interest. . . . [I]n the case of an express trust, [it is] the trustee. Such person is the proper defendant and is the one to be served"]).

   Accordingly, as it is alleged that O'Neil is ZFIT's trustee, the question of whether court-ordered service should be authorized pursuant to CPLR 308 (5) involves the question of whether Ryan has demonstrated that service on O'Neil by the ordinary methods is impracticable. The Court finds that Ryan has failed to tender sufficient proof of the impracticability of serving O'Neil.

-4-

Although Ryan's process server was informed, through an intercom, that no person at 240 North Avenue, Suite 212—O'Neil's alleged place of business—was authorized to accept service, Ryan has not shown or explained why, after a sufficient number of attempts, it would be impracticable to affix the summons and complaint to the door in compliance with CPLR 308 (4). Nor has he offered any explanation as to why he could not attempt to serve her personally or at her residence pursuant to CPLR 308 (1), (2), or (4). While a party seeking an order permitting a court-approved method of service pursuant to CPLR 308 (5) need not demonstrate that they have previously exercised "due diligence" in attempting to serve, he or she must nevertheless "'make some showing' that other CPLR 308 methods won't work" (Siegel, NY Prac § 75 [5th ed.], citing *Markoff v South Nassau Community Hosp.*, 91 AD2d 1064 [2d Dept 1983] *aff'd* 61 NY2d 283 [1984]; see also *Home Fed. Sav. Bank v Versace,* 252 AD2d 480, 480-481 [2d Dept 1998] [CPLR 308 (5) "does not require the applicant to satisfy the more stringent standard of 'due diligence' under CPLR 308 (4), or to make a showing that 'actual prior attempts to serve a party under each and every method of the statute have been undertaken'"]). Thus, Ryan's failure to show impracticability as to service upon O'Neil is not a matter of his failure to exercise "due diligence" in attempting to serve her; rather, his application is denied because he has failed to articulate why serving O'Neil utilizing the ordinary methods would be impracticable.

Moreover, Ryan has not demonstrated that service upon O'Neil through RWK would be reasonably calculated to put her on notice of the action (see *Dobkin v Chapman*, 21 NY2d 490, 502 [1968]). Although RWK appeared for ZFIT at an appearance before Justice Oing in *Ryan v Zherka*, Ryan has not shown that RWK represents or is in any way in contact with O'Neil, not only in her capacity as trustee, but personally. Accordingly, even if Ryan had demonstrated that serving O'Neil is impracticable within the meaning of CPLR 308 (5), he has failed to establish his entitlement to an order deeming that his service upon RWK should constitute nunc pro tunc service upon O'Neil.

The denial of the branch of Ryan's motion which seeks an order permitting a court-approved method of service on O'Neil and ZFIT is denied without prejudice to the filing of a new motion for such relief, upon proper proof.

## II. Immediate turnover of the funds is denied

In light of Ryan's failure to acquire jurisdiction over necessary parties, the branch of his motion which is, in effect, for summary judgment on his cause of action to set aside the alleged fraudulent conveyance and directing the immediate turnover of funds, is denied (see *Alvaro v Faracco*, 85 AD3d 1072, 1073 [2d Dept 2011] ["In an action to set aside an alleged fraudulent conveyance, the transferee of the subject property is a necessary party"]). The Court further notes that Ryan has failed to annex a copy of the complaint to his motion papers, necessitating denial of his motion (see *Fiber Consultants, Inc. v Fiber Optek Interconnect Corp.*, 84 AD3d 1153, 1154 [2d Dept 2011] ["Denial of summary judgment was required since the plaintiff failed to include a copy of the pleadings in support of its motion, as required by CPLR 3212 (b)"]).

### III. A preliminary injunction restraining the transfer of the funds is granted

However, Ryan has demonstrated his entitlement to a preliminary injunction prohibiting the disbursement of the $75,000 currently held in escrow by Tilem & Associates. Ryan has demonstrated a likelihood of success in establishing that the funds and/or Zherka's interest in *Zherka v Amicone* was transferred by Zherka to ZFIT without fair consideration, frustrating Ryan's ability to collect on his judgment (*see Fischer v Sadov Realty Corp.*, 34 AD3d 632, 633 [2d Dept 2006] [party seeking to set aside a fraudulent conveyance must show: "(1) that the conveyance was made without fair consideration; (2) that at the time of transfer, the transferor was a defendant in an action for money damages or a judgment in such action had been docketed against him; and (3) that a final judgment has been rendered against the transferor that remains unsatisfied"]). "Preliminary injunctions are proper with respect to the release of funds in escrow where it is necessary to preserve the status quo during the pendency of the litigation" (*see Felix v Brand Serv. Group LLC*, 101 AD3d 1724 [4th Dept 2012]). Although O'Neil claims that the funds currently in escrow are her own personal funds, the record indicates, at a minimum, that there may have been a co-mingling of funds belonging to the trust by O'Neil and/or RWK such that the funds presently in escrow could be recoverable by Ryan. Accordingly, the funds shall remain in Tilem & Associates' escrow account until further order of this Court.

Further, the Court finds it prudent that, under the circumstances, any further disbursement of funds from Yonkers to ZFIT relating to the settlement in *Zherka v Amicone* should be stayed or, if such funds have since been disbursed, should be held in escrow by Tilem & Associates pending resolution of the instant matter.

All other relief requested by Ryan is not warranted given the procedural posture of this action and is, therefore, denied without prejudice.

Based upon the foregoing, it is hereby;

ORDERED that the branch of the plaintiff's motion which is pursuant to CPLR 308 (5) for court-ordered service upon the defendant Selim Zherka is granted, and service upon Tilem & Associates, P.C., shall constitute a court-approved method of service upon Zherka, which shall be recognized nunc pro tunc to the date that Tilem & Associates, P.C., were served; and it is further

ORDERED that the branch of the plaintiff's motion which is for a preliminary injunction restraining the transfer of $75,000 presently held in escrow by Tilem & Associates, P.C.,[5] is granted; and it is further

ORDERED that any further disbursement of funds by the City of Yonkers to the Zherka

---

[5] Mr. Tilem's firm is registered in NYSCEF as "Tilem & Campbell, P.C.," which is evidently a successor to Tilem & Associates, P.C. To avoid any ambiguity, the restraints imposed by this order shall apply to any successor firm to Tilem & Associates, P.C.



Family Irrevocable Trust relating to *Zherka v Amicone, et al.* (Westchester Index No. 30139/2010) is stayed, unless such funds have already been disbursed, in which case they shall be held in escrow by Tilem & Associates, P.C., until further order of this Court; and it is further

ORDERED that the plaintiff's motion is otherwise denied; and it is further

ORDERED that the defendant Selim Zherka shall have 30 days from the date of service upon him of this order with notice of entry at his last known address to answer or otherwise appear in this action (*see* CPLR 320 [a]); and it is further

ORDERED that all other relief requested and not decided herein is denied.

This constitutes the decision and order of the Court.

Dated: White Plains, New York
      November 18, 2014

HON. FRANCESCA E. CONNOLLY, J.S.C.

TO:    Beattie Padovano, LLC
        Attorneys for the plaintiff
        50 Chestnut Ridge Road
        Montvale, NJ 07645
        By NYSCEF

        Tilem & Campbell, P.C.
        Attorneys for the defendants Zherka Family Irrevocable Trust,
            Dominica O'Neil, and John Doe defendants
        188 East Post Road
        White Plains, NY 10601
        By NYSCEF

        Selim Zherka
        Defendant, pro se
        4 Hageman Court
        Katonah, NY 10536
        By Mail

        Selim Zherka
        Defendant, pro se
        Metropolitan Correctional Center, Register No. 71500-054
        150 Park Row
        New York, NY 10007
        By Mail

Office of Corporation Counsel of the City of Yonkers
40 South Broadway
Yonkers, NY 10701
By fax: (914) 964-0563